IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| PAUL E. ISAACS,<br><br>      Plaintiff,<br><br>v.<br><br>BAYHEALTH MEDICAL CENTER, INC.,<br><br>      Defendant. | Civil Action No. 22-1468-RGA |

MEMORANDUM OPINION

Gary E. Junge (argued), SCHMITTINGER & RODRIGUEZ, P.A., Dover, DE,

    Attorney for Plaintiff.

Stacy A. Scrivani, Alexis R. Gambale, STEVENS & LEE, P.C., Wilmington, DE; Lisa M. Scidurlo, STEVENS & LEE, P.C., King of Prussia, PA; Michael M. Greenfield (argued), Sasha A. Phillips, STEVENS & LEE, P.C., Philadelphia, PA; Theresa M. Zechman, STEVENS & LEE, P.C., Lancaster, PA,

    Attorneys for Defendant.

January 31, 2024


**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendant's Motion to Dismiss. (D.I. 15). I have considered the parties' briefing. (D.I. 16, 17, 19). I heard oral argument on January 4, 2024 on a group of cases, including the present action, involving religious discrimination claims with regards to Defendant's COVID-19 vaccine policy. (Hearing Tr.).[1] For the reasons set forth below, this motion is GRANTED in part and DISMISSED as moot in part.

## I. BACKGROUND

This case stems from the COVID-19 pandemic and a healthcare provider's efforts to respond to government vaccination policy. The Amended Complaint (D.I. 9) is the operative complaint and alleges the following facts.

On August 12, 2021, Governor John Carney ordered all Delaware state health care employees either to become vaccinated for the COVID-19 virus by September 30, 2021 or to submit to regular testing for the COVID-19 virus. In November 2021, the Centers for Medicare & Medicaid Services ("CMS") issued a COVID-19 vaccine mandate requiring certain health care facilities, including Defendant, to ensure their staff members were all either vaccinated against COVID-19 or had obtained medical or religious exemptions to taking the vaccine.

Pursuant to Defendant's vaccination policy, employees seeking religious exemption requests were required to submit forms explaining the religious beliefs that formed their basis of their objection to the COVID-19 vaccine. (*See* D.I. 9-1, Ex. A). Employees could attach additional materials, such as letters from religious leaders, to support their exemption request. (*Id.*).

---

[1] Citations to the transcript of the argument are in the format "Hearing Tr. at __."

Employees who had their religious exemption requests rejected, and continued to refuse the COVID-19 vaccine, were terminated on February 28, 2022. Plaintiff was one of these employees. Plaintiff subsequently filed the present suit raising religious discrimination claims against Defendant under Title VII. *See* 42 U.S.C. § 2000e. Defendant moves to dismiss Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6). (D.I. 15).

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B. Failure to Accommodate

Title VII makes it unlawful for an employer to discriminate against an employee based on that employee's religion. 42 U.S.C. § 2000e-2(a)(1). The statute defines "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish a prima facie case of religious discrimination under Title VII based on a failure to accommodate theory, an employee must show that (1) the employee "held a sincere religious belief that conflicted with a job requirement," (2) the employee "informed their employer of the conflict," and (3) the employee was "disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017). "Plaintiffs are not required to establish each element to survive a motion to dismiss; they must simply allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of their claims." *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465 (M.D. Pa. 2022) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)).

A district court's inquiry into whether a plaintiff has plausibly plead the first prong of a prima facie religious discrimination claim is limited to determining whether the belief is (1) "sincerely held" and (2) religious within the plaintiff's "own scheme of things." *Welsh v. United States*, 398 U.S. 333, 339 (1970) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)).

4

With respect to the first prong of this inquiry, "[w]hether a belief is sincerely held is a question of fact." *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 2021 WL 4399672, at *6 (E.D. Pa. Sept. 27, 2021) (citing *Seeger*, 380 U.S. at 185).

With respect to the second prong, determining whether a plaintiff's beliefs are religious "presents a most delicate question." *Africa v. Pennsylvania*, 662 F.2d 1025, 1031 (3d Cir. 1981). "[I]t is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Aliano v. Twp. of Maplewood*, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023) (citing *Fallon*, 877 F.3d at 490). "The notion that all of life's activities can be cloaked with religious significance" cannot transform an otherwise secular idea into a religious belief. *Africa*, 662 F.2d at 1035. "[T]he very concept of ordered liberty" precludes allowing any individual "a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Africa*, 662 F.2d at 1031 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972)).

The Third Circuit has adopted the three *Africa* factors to differentiate between views that are "religious in nature" and those that are "essentially political, sociological, or philosophical." *Fallon*, 877 F.3d at 490–91 (quoting *Seeger*, 380 U.S. at 164); *Africa*, 662 F.2d at 1032. A judge must determine whether the beliefs in question (1) "address fundamental and ultimate questions having to do with deep and imponderable matters," (2) "are comprehensive in nature," and (3) "are accompanied by certain formal and external signs." *Fallon*, 877 F.3d at 491 (quoting *Africa*, 662 F.2d at 1032) (cleaned up).

The *Africa* court tackled the issue of analyzing non-traditional "religious" beliefs or practices by "look[ing] to familiar religions as models in order to ascertain, by comparison, whether the new set of ideas or beliefs is confronting the same concerns, or serving the same

purposes, as unquestioned and accepted 'religions.'" *Africa*, 662 F.2d at 1032 (quoting *Malnak v. Yogi*, 592 F.2d 197, 205 (3d Cir. 1979) (Adams, J., concurring)); *Fallon*, 877 F.3d at 491 (describing the process as considering "how a belief may occupy a place parallel to that filled by God in traditionally religious persons."). The *Africa* factors were adopted as "three 'useful indicia' to determine the existence of a religion" pursuant to this "definition by analogy" approach. *Africa*, 662 F.2d at 1032. Their applicability to a person who professes a more widely recognized, "traditional" religion is a little less obvious.[2] However, because individuals cannot "cloak" all personal beliefs "with religious significance," a court must still scrutinize whether a sincerely held belief, asserted by someone claiming a recognized religion, is sufficiently connected to their religion. *Id.* at 1035; *see Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023) ("[T]he issue in this case is not whether plaintiff has asserted a plausible claim that she has a personal religious faith. . . . Plaintiff does not claim that she has suffered unlawful discrimination because she believes in God. Rather, she claims that she has suffered unlawful discrimination because she was required to comply with the COVID-19 vaccination requirement. The critical question, therefore, is whether the complaint alleges sufficient plausible facts from which it could be reasonably inferred that being vaccinated against COVID-19 violates a tenet or principle of her religious belief.").

Of course, individuals may have religious beliefs which are not widely accepted within their religion. *See Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 708 (1981) ("The guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect"); 29 C.F.R. § 1605.1 ("The fact that no religious group espouses such beliefs or

---

[2] Plaintiff follows a recognized religion that already meets the three *Africa* factors. (*See* D.I. 9 ¶ 13).

the fact that the religious group to which the individual professes to belong may not accept such belief will not determine whether the belief is a religious belief of the employee or prospective employee."). Beliefs of this nature would, logically, fail to be sufficiently linked to the individual's claimed religion and need to satisfy the *Africa* standard to qualify as religious beliefs.

### C. Disparate Treatment

To establish a prima facie case of religious discrimination under Title VII based on a disparate treatment theory, an employee must show that (1) the employee is "a member of a protected class," (2) the employee "suffered an adverse employment action," and (3) "nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281–82 (3d Cir. 2001). Depending on whether the plaintiff proceeds under a pretext or mixed-motive theory, they must ultimately prove that their protected status was either a "motivating" or a "determinative" factor in the employer's challenged action. *Connelly*, 809 F.3d at 787–88.

## III.  DISCUSSION

### A. Failure to Accommodate

At this stage of the case, only one issue exists—whether Plaintiff has sufficiently pled that the belief upon which his objection to receiving the COVID-19 vaccine was based is a religious belief. "[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts regarding the nature of [his] belief system, as well as facts connecting [his] objection to that belief system." *Aliano*, 2023 WL 4398493, at *5. "In other words, [he] must demonstrate that [his] objection arises from a subjective belief that is tied to [his] belief system which meets the *Africa* factors." *Id.* (citing *Africa*, 662 F.2d at 1032; *Fallon*, 877 F.2d at 492–93 (concluding that

7

the plaintiff's "anti-vaccination beliefs are not religious" but providing "[t]his is not to say that anti-vaccination beliefs cannot be part of a broader religious faith; in some circumstances, they can, and in those circumstances, they are protected")); *see also Brown v. Child.'s Hosp. of Phila.*, 794 F. App'x 226, 227 (3d Cir. 2020) ("[I]t is not sufficient merely to hold a 'sincere opposition to vaccination'; rather, the individual must show that the 'opposition to vaccination is a religious belief.'" (quoting *Fallon*, 877 F.3d at 490)); *Griffin v. Massachusetts Dep't of Revenue*, 2023 WL 4685942, at *5 (D. Mass. July 20, 2023); *Ellison v. Inova Health Care Servs.*, 2023 WL 6038016, at *6 (E.D. Va. Sept. 14, 2023) (A plaintiff should "provide[] sufficient allegations regarding [their] subjective personal beliefs, how those beliefs are related to [their] faith, and how those beliefs form the basis of [their] objection to the COVID-19 vaccination."). Defendant argues that Plaintiff's objection to the vaccine stems from Plaintiff's personal moral code rather than from his religious beliefs.³ (D.I. 16 at 8–16; D.I. 19 at 5–8).

Plaintiff identifies two categories of beliefs which he argues qualify as religious beliefs. (*See* D.I. 22 at 5 (placing Plaintiff under the "Fetal Stem Cell Argument" and "Cannot Defile Body Because it is a Temple of the Holy Spirit" categories)). In addition, his Complaint describes his belief that "going against his God-given conscience is a sin." (D.I. 9 ¶ 19). For the following reasons, I find Plaintiff has failed to adequately plead facts that show any of these categories are religious beliefs that form the basis of his objection to the COVID-19 vaccine.

---

³ Defendant does not challenge Plaintiff's assertion that his religious faith of Christianity meets the *Africa* test. Rather, Defendant argues the beliefs on which Plaintiff's objection to the vaccine is based are secular beliefs based on Plaintiff's personal moral code, as opposed to religious beliefs that form a part of Plaintiff's Christian faith. (*See* D.I. 16 at 8–16; D.I. 19 at 5–8). I therefore address only the questions at issue: whether Plaintiff has sufficiently connected his objection to the vaccine to a religious belief tied to his Christian faith or whether the beliefs that form the basis of Plaintiff's objection would otherwise satisfy the *Africa* standard.

8

### 1. "Body is a Temple" Belief

Plaintiff's exemption form states that the "COVID vaccines are experimental," and that "I do not believe in using my body to host what is experimental and very likely includes human tissue from another life, or animals." (D.I. 9-1, Ex. A, at 13 of 14). Plaintiff goes on to say, "I believe my body is the temple of the Holy Spirit," "[s]o I will not participate in organ donation." (*Id.* (citing *id.* at 4–12 of 14 (Plaintiff's "Advance Health Care Directive"); Romans 12:1–2 ("I beseech you therefore, brethren, by the mercies of God, that you present your bodies a living sacrifice, holy, acceptable to God, which is your reasonable service. And do not be conformed to this world, but be transformed by the renewing of your mind, that you may prove what is that good and acceptable and perfect will of God."); 1 Cor. 6:19–20 ("Or do you not know that your body is the temple of the Holy Spirit who is in you, whom you have from God, and you are not your own? For you were bought at a price; therefore glorify God in your body [a]and in your spirit, which are God's."))). Plaintiff states, "I believe the life is in the blood, and there is to be no mixture between animals and man," "so, I do/will not accept blood transfusions." *Id.* (citing *id.* at 4–12 of 14; Leviticus 17:122–14 ("For the life of the flesh is in the blood, and I have given it to you upon the altar to make atonement for your souls; for it is the blood that makes atonement for the soul. Therefore I said to the children of Israel, 'No one among you shall eat blood, nor shall any stranger who dwells among you eat blood.' Whatever man of the children of Israel, or of the strangers who dwell among you, who hunts and catches any animal or bird that may be eaten, he shall pour out its blood and cover it with dust; for it is the life of all flesh. Its blood sustains its life. Therefore I said to the children of Israel, 'You shall not eat the blood of any flesh, for the life of all flesh is its blood. Whoever eats it shall be cut off.'")).

9

Plaintiff does not explain the connection between his stated beliefs and his objection to the COVID-19 vaccine. From the information provided, it is unclear how his religious beliefs lead to his stance on organ donation or his stance on the COVID-19 vaccines. Plaintiff's refusal to accept blood transfusions, based on his belief that the blood of animals and humans should not be mixed, appears to be more concretely connected to his religious beliefs. It is less clear, however, how this belief serves as a basis for Plaintiff's objection to the COVID-19 vaccines; for example, Plaintiff is not alleging that the COVID-19 vaccines contain animal blood. Plaintiff fails to adequately link his objection to the COVID-19 vaccines to his "Body is a Temple" belief.

### 2. "Fetal Stem Cells" Belief

Plaintiff's exemption form states that COVID vaccines "very likely includes human tissue from another life." (*Id.*). The exemption form, however, lacks any explanation tying his objection to vaccines that contain fetal cells to his religious beliefs. "The Complaint does not even identify *why* Plaintiff objects to the use of fetal cell lines in the development of the COVID-19 vaccine; it merely asserts that fetal cell lines were, in fact, used by vaccine developers." *Winans v. Cox Auto., Inc.*, 2023 WL 2975872, at *4 (E.D. Pa. Apr. 17, 2023); *see also Ellison*, 2023 WL 6038016, at *7; *Aliano*, 2023 WL 4398493, at *10–11. Plaintiff fails to adequately link his objection to the COVID-19 vaccines to religious beliefs regarding fetal cells.

### 3. "God-given conscience" Belief

Plaintiff's exemption form states:

I believe my decision is Biblically sound and I am sincerely following my God-given conscience.

Romans 14:23 tells us that going against our God-given conscience is sin. The context deals with putting something in our body, which a vaccine clearly is designed to do, intrusively! Even James 4:17 declares: whoever "knows to do good and does not do *it*, to him it is sin." Each of us will be held accountable to God for how we act upon our God-given conscience. I stand with Apostle Peter in the Early

10

> Church, who told the leaders of his day: "Whether it is right in the sight of God to listen to you more than to God, you judge. For we cannot but speak the things which we have seen and heard."

(D.I. 9-1, Ex. A, at 13 of 14). Allowing Plaintiff the ability to object to anything that "go[es] against [his] God-given conscience" would amount to the type of "blanket privilege" that does not qualify as religious belief under *Africa*. *See Africa*, 662 F.2d at 1031. "'[T]he very concept of ordered liberty precludes allowing' [Plaintiff], or any other person, a blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *Id.* (citing *Yoder*, 406 U.S. at 215–16). Several other district courts handling similar religious discrimination cases involving the COVID-19 vaccine have similarly found such beliefs to amount to "blanket privileges" that do not qualify as religious beliefs. *See Lucky v. Landmark Med. of Mich., P.C.*, 2023 WL 7095085, at *4–7 (E.D. Mich. Oct. 26, 2023); *Ellison*, 2023 WL 6038016, at *5; *Ulrich v. Lancaster Gen. Health*, 2023 WL 2939585, at *5 (E.D. Pa. Apr. 13, 2023); *Blackwell v. Lehigh Valley Health Network*, 2023 WL 362392, at *8 (E.D. Pa. Jan. 23, 2023); *Finkbeiner*, 623 F. Supp. 3d at 465.

Plaintiff's counsel argued that whether a belief amounted to a "blanket privilege" presents an issue of sincerity that should be reserved for a jury. (Hearing Tr. at 33:3–14). The *Africa* court, however, indicated that a principal reason that courts engaged in the practice of making "uneasy differentiations" between religious and nonreligious beliefs was to prevent any individual from retaining a "blanket privilege 'to make his own standards on matters of conduct in which society as a whole has important interests.'" *See Africa*, 662 F.2d at 1031. I find it proper to consider this question when dealing with religiosity. As noted above, other district courts have likewise examined the "blanket privilege" question at the motion to dismiss stage.

For the reasons stated above, I find Plaintiff's Complaint does not plausibly allege that Plaintiff's objection to receiving the COVID-19 vaccine was based on a sincerely held religious belief. At oral argument, Plaintiff's counsel agreed that, in the event that I found a plaintiff had not adequately pled a religious belief, dismissal with prejudice was the proper path forward. (Hearing Tr. at 65:1–9). Plaintiff's counsel caveated his concession by arguing there were some cases where "the Plaintiff should have been given a chance to flesh out their opinion" because they asked for, and did not receive, the opportunity to appeal Defendant's decision to deny their accommodation request. (*Id.* at 65:8–19).

The question before me, however, is not whether the law required Defendant's accommodation request procedure to include an appeals process. "The motion to dismiss attacks what was pled in the complaint, not whether [Plaintiff] could or would have provided more information about [his] alleged religious objection to the vaccine" in his exemption request. *Lucky*, 2023 WL 7095085, at *8. "Put differently: the instant motion to dismiss is addressed to the first element of a religious discrimination claim: whether [Plaintiff] had a sincerely held religious belief that conflicted with an employment requirement." *Id.* "What [he] told [his] . . . employer goes to the second element of the claim, whether [he] informed the employer about the conflict." *Id.*

I nevertheless believe Plaintiff may be able to successfully plead a sincerely held religious belief if given the opportunity to amend his Complaint. I will therefore dismiss Plaintiff's failure to accommodate claim without prejudice.

### B. Disparate Treatment

Defendant argues that Plaintiff has failed to sufficiently plead a religious discrimination claim under Title VII based on disparate treatment. (D.I. 16 at 16). Plaintiff states that he has

not yet pled disparate treatment. (D.I. 17 at 19). I agree with Defendant that Plaintiff's assertion of "differential treatment" presents some confusion about whether a disparate treatment claim has been raised. (D.I. 19 at 10 n. 27). Nevertheless, since Plaintiff states he is not now pleading disparate treatment, I accept that he is not, and I will dismiss Defendant's argument as moot.

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 15) is GRANTED in part and DISMISSED as moot in part.

An appropriate order will issue.